## UNITED STATES v. BEARD'S ERIE BASIN, Inc.

### No. 46, Docket 20304.

Circuit Court of Appeals, Second Circuit.

Argued Oct. 16, 1946.

Decided Nov. 11, 1946.

Shiland, Hedges & Pelham, of New York City (Charles Lamb and Arleigh Pelham, both of New York City, of counsel), for Beard's Erie Basin, Inc., defendant-appellant.

David L. Bazelon, Asst. Atty. Gen., Harry T. Dolan, Sp. Asst. to Atty. Gen., Roger P. Marquis, Atty., Dept. of Justice, of Washington, D. C., and Alvin O. West, Atty., Dept. of Justice, of Nashville, Tenn., for United States, petitioner-appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Beard's Erie Basin, Inc., the owner of property taken by the United States in condemnation, appeals from the award on the ground that it failed to allow any damages caused by injury to its remaining property by reason of the severance of the part taken. The Commissioners of Appraisal in ascertaining the compensation to be awarded reported as follows:

"To BEARD'S ERIE BASIN, INC., Reputed Owner for the premises taken— 22.384 acres

| | | |
|---|---:|---:|
| Land and Improvements | | $800,657.60 |
| Land including upland and land under water | $762,157.60 | |
| Buildings and Improvements Piers No. 4 and 5, bridge, and miscellaneous buildings, sheds and structures | 38,500.00 | |
| Total Land and Improvements | | $800,657.60 |

"The Commissioners find that no proper or sufficient proof has been adduced upon the hearing held by them to establish the existence or extent of any alleged severance damages, or to warrant any allowance upon a claim therefor. The evidence clearly shows that the income of the remaining portion of the premises was substantially greater after the taking by the Government in this proceeding than it had been for many years prior thereto. The proof fails to establish that the income from the remainder not taken, during the period prior to the taking, was dependent upon the ownership of the Beard's Erie Basin of the part taken, or that the income which may

be anticipated in the future from such remainder will be impaired by reason of the taking. It does not appear therefore, that the taking adversely affected the property not so taken. The commissioners are empowered to find whether or not there are any severance damages only as of the date of the taking, and the past history, indicative of losses, contrasts sharply with the profits of the claimant during the subsequent period. The Commissioners may not speculate or go beyond the record as to the possible causes for the considerable improvement following the taking.

"The Commissioners have accordingly disallowed the claim for severance damages. The amount hereinbefore set forth, to wit, $800,657.60 is fixed and determined by the Commissioners to represent the just compensation which should be paid to Beard's Erie, Inc., for the taking of the parcel hereby appraised."

The District Court confirmed the report of the Commissioners in respect to severance damage in the following language:

"The defendant contends that they were entitled to some $435,173 as consequential or severance damages as testified to by their expert Partridge. The Commissioners' report makes no allowance for consequential damage. They found: First, no proof was adduced to establish the existence or extent of the alleged severance damage; second, that the income from the remaining portion of land in the possession of Beard's Erie Basin was greater after the taking than it had been for many years prior to the taking; third, that the proof failed to show that the income from the remainder prior to the taking was dependent upon conjunctive ownership with the part taken, or that the income which might be anticipated in the future from the remaining property would be impaired by the taking. There is no dispute that the income from the remaining portion was much greater after the taking than before. As a matter of fact, the evidence indicates clearly that in some years there was a substantial loss in the operation of this property by the defendant prior to the taking.

"The conclusion reached by the Commission, to wit: that the income from the remaining portion was greater after the taking than before and that the proof failed to show the income from the remainder prior to the taking was dependent upon conjunctive ownership with the part taken, or that the income which might be anticipated in the future from the remaining property would be impaired by the taking, is amply supported by the evidence."

No questions of law are involved on this appeal. The objections of the appellant all are attempts to obtain a revision of findings of fact fully justified by the record. In United States v. Village of Highland Falls, 2 Cir., 154 F.2d 224, 227, where an award in condemnation was sought to be revised on appeal, we said that:

"* * * Hence, since § 258 of Title 40 U.S.C.A., requires us to follow state procedure, we should follow the practice of the New York courts in deciding whether the judge was right in affirming the awards.

"That review is strictly limited, owing to the exceptional powers of the commissioners. Section 14 of that act requires them to view the premises to be condemned, and apparently because of this, beginning in 1852 * * * the New York courts have accorded to their awards an extraordinary immunity from review."

The present case, like the one before us in United States v. Village of Highland Falls, supra, was one in which the commissioners viewed the premises and it does not appear that they followed a wrong rule of law or made an award having no reasonable basis.

The property taken adjoined property of the Robins Dry Dock and Repair Company which already separated the original Beard holdings into two tracts. The taking did not cause any isolation which did not already exist of other portions of the Beard property. The parts of the Beard property to the north, east, south and southwest of the premises taken constituted no single entity. These parts were rented out to various different tenants for separate uses.

It is contended that no proper award has been made for severance of a strip of 90 feet at the end of Pier 5 and not taken in this proceeding. The compensation allowed was based on a capitalization of earnings theretofore paid by Robins Dry Dock and

Repair Company as tenant for the whole of Pier 5. When this has been done there would seem to be no reason for adding a further sum for severance.

Claimant's witness Hinman testified that he was unable to estimate direct or consequential damages which he believed would arise from the severance of a certain triangular strip of fairway from Beard's other property (fol. 3247). The government's witness Shlichta said that Beard's other property would not be physically affected by any adverse use of the strip (fol. 2541). Nor did it appear that there has been any such adverse use or any actual exclusion of Beard from the strip. Therefore, upon the record before us, there was no error in not awarding damages for injury to the portion of the fairway not taken.

It is further argued that dredging and keeping its remaining bulkheads and breakwaters in repair would involve burdening the claimant with the same expenses as prior to the taking, and that consideration of this fact should have resulted in an allowance of a part of this burden as severance damages. But claimant's President—Hinman—admitted that between 1930 and 1941 the dredging was almost entirely done by the Robins Dry Dock and Repair Company, and that since 1921 only three minor jobs of dredging had been done by claimant itself. Moreover, there was evidence that the cost of maintenance of the claimant's remaining property should decrease proportionately to the decrease in the area to be maintained (fol. 2211).

The contention that acquisition by the government of Piers 4 and 5, and of the triangular strip already referred to, limited the capacity of the Basin to serve the remaining properties of the claimant involves factors that are speculative and were properly not regarded as items of severance damage. It must be remembered that the Basin which was owned by Beard prior to the taking, though of a larger area, had to serve not only claimant's property now remaining but also the property since acquired by the government. It does not seem possible to say that the claimant's remaining lands and waters will suffer by this restriction to the use of a smaller area of fairway than was available before. The contention did not appeal to the Commissioners and cannot prevail with us in the face of testimony by the government's experts (fols. 2298-2299; 3053-3054) that the claimant suffered no severance damage; especially when the Commissioners have held a view of the premises, which presumably took the whole situation into account.

It is further contended that claimant may suffer severance damages from the acquisition by the government of Pier 4 and the restriction of space in which to manœuvre or berth vessels in case the area formerly covered by Pier 4 (which has now been removed by the government) and the waters to the north of it should hereafter be built upon or otherwise obstructed. This consideration is speculative and was held an insufficient item of damage by the Commissioners, and should not prevail with us.

The further contention that the Commissioners gave undue weight to the fact that the claimant was receiving larger rentals for its property remaining after the taking than it had received from that property for some years, is not persuasive. There is no indication that this fact was regarded as determinative, but it clearly was entitled to some probative value on the issue of whether the claimant suffered any damage from severance.

It is also contended that the taking of the lands along Columbia Street might limit access to claimant's remaining property which might be reached through that street. This, like the other criticisms of the award, involves reconsideration of the exercise of sound judgment by the Commissioners. It is no more than an argument based on no definite proof of present or future damage.

All the foregoing contentions involve disputed questions of fact and varying inferences which might be drawn from the evidence. The resolution of such matters rests with the Commissioners.

Judgment affirmed.